**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                                         Case No. 99-80399

JOSEPH KENT COLBERT,

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR IMMEDIATE
COMPASSIONATE RELEASE**

Defendant Joseph Kent Colbert was convicted by jury of two counts of bank robbery, 18 U.S.C. § 2113(a). (ECF No. 87, PageID.44.) On April 24, 2000, the court sentenced Defendant to 240 months imprisonment. (*Id.*, PageID.45.) His projected release date is in June 2022. (ECF No. 165, PageID.500.)

Defendant filed a "Motion for Immediate Compassionate Release." (ECF No. 161.) He argues that his past treatment for prostate cancer and the outbreak of the Coronavirus Disease ("COVID-19") supports his release. The government has filed a response. (ECF No. 165.) The court has reviewed the record and, for the reasons provided below, the court will deny Defendant's motion.

A court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The court must also weigh the sentencing factors provided under 18 U.S.C. § 3553(a) and determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) is the "applicable policy statement[]" with which courts must comply. 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 of the Sentencing Guidelines explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of four categories of "extraordinary and compelling reasons." Those categories are: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons." U.S. Sentencing Guidelines Manual § 1B1.13. The category of "Other Reasons" requires a determination from the Director of the Bureau of Prisons ("BOP") that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" outlined in the other three categories. *Id.* § 1B1.13 cmt. n.1(D). The BOP has released Program Statement 5050.50 to guide its determination of extraordinary and compelling circumstances. Federal Bureau of Prisons, U.S. Department of Justice, Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (2019).

In all, a defendant seeking compassionate release must present extraordinary and compelling circumstances, must have § 3553(a)'s sentencing factors weigh in his favor, must not be a threat to others as determined by § 3142(g), and must fit within one of the four categories in § 1B.13 of the Sentencing Guidelines. 18 U.S.C. § 3582(c)(1)(A); U.S. Sentencing Guidelines Manual § 1B.13; *United States v. Sapp*, Case No. 14-20520, 2020 WL 515935, at *2 (E.D. Mich. Jan. 31, 2020) (Leitman, J.) (summarizing compassionate release requirements); *see also United States v. Kincaid*, 802 Fed. App'x 187, 188 (6th Cir. 2020).

2

Defendant's circumstances are not "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A). "Extraordinary" is defined as "exceptional to a very marked extent." *Extraordinary*, Webster's Third International Dictionary, Unabridged (2020). "Compelling" is defined as "tending to convince or convert by or as if by forcefulness of evidence." *Compelling*, Webster's Third International Dictionary, Unabridged (2020). A court in this district has described the requirements of "extraordinary" in the context of compassionate release "as beyond what is usual, customary, regular, or common," and a "'compelling reason' as one so great that irreparable harm or injustice would result if the relief is not granted." *Sapp*, 2020 WL 515935, at *3 (citations removed).

Defendant was diagnosed with prostate cancer and received forty-two treatments of radiation between November 5, 2019 and January 9, 2020. (ECF No. 166-1, PageID.561.) His medical records indicate that the disease has been successfully treated, his test results for prostate cancer, Prostate-Specific Antigen ("PSA"), have returned to normal levels, and he is "well and stable." (*Id.*, PageID.563.) Defendant receives regular checkups and PSA tests but has not undergone radiation treatment since January. (*Id.*, PageID.561-62.)

Defendant argues that he is immunosuppressed due to prescription medication. However, his medical records, advanced by the government, show test results for immune system strength, such as white blood cell count and neutrophil levels, are within the normal range.[1] (ECF No. 166-1, PageID.552-53.)

---

[1]  Neutrophils are types of white blood cell; they play an especially important role in fighting infections. American Cancer Society, *Low White Blood Cell Counts (Neutropenia)* (last visited June 22, 2020), https://www.cancer.org/treatment/treatments-and-side-effects/physical-side-effects/low-blood-counts/neutropenia.html#written_by.

Defendant also alleges he has hypertension and high cholesterol. His medical records confirm diagnoses for essential hypertension and hyperlipidemia, a medical term for high cholesterol. (*Id.*, PageID.535.)

Hypertension, a condition that affects about 46% of the U.S. adult population, high cholesterol, and having had prostate cancer in the past are not "extraordinary and compelling" conditions. 18 U.S.C. § 3582(c)(1)(A); *More Than 100 Million Americans Have High Blood Pressure, AHA Says*, American Heart Association, https://www.heart.org/en/news/2018/05/01/more-than-100-million-americans-have-high-blood-pressure-aha-says (last visited June 30, 2020); *see also September Is National Cholesterol Education Month*, Centers for Disease Control and Prevention, https://www.cdc.gov/cholesterol/cholesterol_education_month.htm (last visited June 30, 2020) (102 million U.S. adults have unhealthy cholesterol levels). Defendant's medical records indicate an overall positive outlook. Doctors and other medical professionals have described Defendant's condition as "[g]ood," "clinically doing well," and "well and stable." (ECF No. 166-1, PageID.562-63.) Defendant is apparently "feeling well and participating in his daily activity without interruption." (*Id.*, PageID.563.) While he continues to be monitored, treatment for prostate cancer appears to have been successful, and testing for immune system strength has fallen within normal ranges. (*Id.*, PageID.561-62.)

The outbreak of COVID-19 does not change the court's analysis. Defendant points out the prison complex where he is confined, FCC Butner, has a substantial number of COVID-19 infections overall. However, the detached and separate medical facility where Defendant is housed, FMC Butner, has few confirmed cases of COVID-

4

19. There are five inmates who have tested positive and five staff. *COVID-19: Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited June 22, 2020). The BOP houses 885 inmates at FMC Butner. *FMC Butner*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/buh/ (last visited June 22, 2020),.

The comparatively positive results at FMC Butner may be a result of precautions the BOP has taken throughout the federal prison system to mitigate the spread of COVID-19. Inmates' internal movement is suspended, subject to narrow exceptions such as medical examinations; newly arriving inmates are screened for exposure risk and symptoms; symptomatic inmates, as well as asymptomatic inmates with exposure risk, are isolated; social visits have been canceled. *BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited June 22, 2020). (ECF No. 165, PageID.504-05.)

Defendant requests release on the basis of his medical condition, but there is little knowledge available of key facts impacting his health. The court does not know whether COVID-19 will spread through FMC Butner, despite the BOP's precautions, whether Defendant will contract the disease, and whether Defendant will develop serious symptoms. Defendant states that he would reside with his brother in Farmington Hills, Michigan if released. (ECF No. 161, PageID.467.) Yet Farmington Hills has hundreds of confirmed cases; it is located on the border of Oakland County and Wayne County, two counties with the highest numbers of COVID-19 cases in Michigan. *COVID-19 Percentage of Cases by ZIP Code*, Oakland County Michigan,

https://www.oakgov.com/covid/casesByZip.html (last visited June 23, 2020); *Coronavirus: Michigan Data*, State of Michigan, https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html (last visited June 23, 2020). Defendant may have less risk of infection in the controlled and monitored environment at FMC Butner. (ECF No. 165, PageID.504-05.)

Defendant's access to medical care may well be superior at FMC Butner. Medical staff at FMC Butner detected Defendant's prostate cancer and successfully treated it. (ECF No. 166-1, PageID.561-63.) He receives regular checkups and PSA testing. (*Id.*) By contrast, the court does not know what, if any, monitoring and treatment he would receive if released. If he contracts COVID-19 and develops complications at FMC Butner, the court is at least assured he would be isolated and provided medical care. (ECF No. 165, PageID.504-05.) There are no equivalent assurances if Defendant were released. It appears that he would receive healthcare, probably better healthcare, both for follow-up cancer treatment, and for COVID-19 if needed, at FMC Butner.

Defendant's medical condition is not "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A). Successfully recovering from prostate cancer and having hypertension and high cholesterol, even considering the outbreak of COVID-19, are not so extortionary that "injustice would result if the relief is not granted." *Sapp*, 2020 WL 515935, at *3. Accordingly,

IT IS ORDERED that Defendant's "Motion for Immediate Compassionate Release" (ECF No. 161) is DENIED.

 s/Robert H. Cleland    /  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  June 30, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 30, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner                          /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\99-80399.COLBERT.MotionforImmediateCompassionateRelease.RMK.RHC.2.docx